# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

RICHARD O. EIDE,                                    Civil No. 12-812 (JRT/JJG)

                            Plaintiff,

                                          **MEMORANDUM OPINION AND**
v.                                        **ORDER DENYING DEFENDANT'S**
                                          **MOTION FOR**
COLLTECH, INC.,                           **SUMMARY JUDGMENT**

                            Defendant.

---

Michael J. Sheridan, **ATLAS LAW FIRM, LLC**, 601 Carlson Parkway, Suite 1050, Minnetonka, MN 55305, for plaintiff.

Ryan J. Trucke and Matthew R. Doherty, **BRUTLAG, HARTMANN & TRUCKE, PA**, 3555 Plymouth Boulevard, Suite 117, Plymouth, MN 55447, for defendant.

This case arises out of a collection letter sent by Defendant Colltech, Inc. ("Colltech") to Plaintiff Richard Eide after Eide had filed for bankruptcy. Eide failed to pay a $1,216.75 hospital bill that was the subject of Colltech's collection efforts. Sometime after he incurred the hospital bill, but before Colltech sent the letter in question, the hospital bill was discharged in Eide's bankruptcy proceedings. Eide brings claims for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, arguing that the letter was false and misleading in representing that Eide owed a debt that had previously been discharged in bankruptcy. Colltech brings a motion for summary judgment. Because a material issue of fact remains regarding whether

Colltech is entitled to the protection of the FDCPA's bona fide error defense, 15 U.S.C.

§ 1692k(c), the Court will deny the motion.[1]

## BACKGROUND

### I.    THE UNDERLYING DEBT

On March 29, 2010, Eide received medical care at North County Regional

Hospital (the "Hospital")[2] located at 1300 Anne Street Northwest in Bemidji, Minnesota.

(Aff. of Jon Bergquist, Ex. B, Apr. 25, 2013, Docket No. 11.)[3]  On April 15, 2010, the

Hospital sent Eide a bill for $1,216.75 (the "hospital debt"), reflecting the cost of Eide's

hospital stay that was not covered by health insurance.  (*Id.* ¶ 7, Ex. B at 1, 5.)  Eide did

not pay this bill.  (*Id.* ¶ 8.)

After the Hospital was unsuccessful in attempting to collect Eide's debt, it referred

Eide's account to Pinnacle Financial Group for collection on September 15, 2010.  (*Id.*

¶ 8, Ex. B at 7.)  Pinnacle Financial Group was also unsuccessful in collecting the debt,

and returned Eide's account to the Hospital on September 30, 2011.  (*Id.* ¶ 8, Ex. B at 7.)

---

[1] Eide also requested judgment independent of the motion pursuant to Federal Rule of Civil Procedure 56(f)(1).  (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. at 2, May 13, 2013, Docket No. 14.)  For the same factual reasons that the Court will deny Colltech's motion, the Court will deny Eide's request.

[2] In March 2011, North County Regional Hospital merged with Sanford Health, and is now a distinct corporate entity known as Sanford Bemidji Medical Center.  (Aff. of Jon Bergquist ¶¶ 1-2, Apr. 25, 2013, Docket No. 11.)

[3] Eide claims that he incurred the relevant hospital charge during a 2008 hospital visit. (Aff. of Richard O. Eide ¶ 2, May 16, 2013, Docket No. 15.)  The hospital records indicate that the visit resulting in the hospital debt occurred in March 2010.  (Bergquist Aff., Ex. B.)

## II.   COLLTECH'S COLLECTION EFFORTS

In February 2012, the Hospital transferred Eide's account to Colltech for collection.  (*Id.* ¶ 9, Ex. B at 7; Aff. of Ray Costello ¶ 4, Ex. B, Apr. 25, 2013, Docket No. 12.)  Colltech sent Eide an initial collection letter on February 15, 2012, regarding the $1,216.75 debt.  (Costello Aff. ¶ 5, Ex. C.)  The letter listed a "Balance Due" of $1,216.75 and explained that Eide's account "has been referred to [Colltech] for collection and at this time [Colltech is] willing to work with you to resolve this outstanding balance."  (*Id.*, Ex. C.)  The letter also warned Eide "[u]nless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid."  (*Id.*)  If Eide notified Colltech within 30 days from receiving this notice of any dispute with the validity of the debt, the letter explained that Colltech would "obtain verification of the debt or obtain a copy of a judgment and mail [Eide] a copy of such judgment or verification."  (*Id.*)

When Eide did not dispute the validity of his debt within the thirty-day period, Colltech requested a credit bureau report on March 22, 2012.  (*Id.* ¶ 6.)  Pursuant to this credit report, on April 3, 2012, Colltech "uncovered" the fact that Eide had filed for bankruptcy on November 7, 2011 – before his account was assigned to Colltech.  (*Id.* ¶ 7.)  Colltech ceased all collection activity on Eide's account, and informed the Hospital that Eide had filed for bankruptcy.  (*Id.* ¶ 7; Bergquist Aff. ¶ 10.)

## III.   EIDE'S BANKRUPTCY PROCEEDINGS

On November 7, 2011, Eide and his wife filed a Chapter 7 bankruptcy petition in United States Bankruptcy Court for the District of Minnesota.  (Aff. of Richard O. Eide

¶ 4, May 16, 2013, Docket No. 15; Aff. of Michael J. Sheridan ¶ 2, Ex. A at 1, May 16, 2013, Docket No. 16.)

On his bankruptcy schedule for creditors holding unsecured, nonpriority claims, Eide listed a $1,217 debt owed to creditor North County Regional Hospital. (Costello Aff., Ex. D at 3.) The schedule also listed a $263 debt owed to "Sanford Health." (*Id.*, Ex. D at 4.) At the time his bankruptcy attorney was completing the schedules, Eide did not have the address for North County Regional Hospital or Sanford Health. (Sheridan Aff. ¶ 3.) Eide did, however, have collection letters regarding the two debts from Pinnacle Financial Group and AR Audit Services. (*Id.*) Because the collection letters "were relatively recent to the date of the bankruptcy filing" Eide's attorney used the addresses of the collection agencies on the bankruptcy schedules in lieu of the addresses of the creditors. (*Id.* ¶ 4.) Therefore the bankruptcy schedule listed the Hospital's address as "c/o Pinnacle Financial Group, 7825 Washington Ave S, Ste 310 Minneapolis, MN 55439." (Costello Aff., Ex. D at 3.) The schedule listed Sanford Health's address as "c/o AR Audit Services, PO Box 6177, Bismarck, ND 58506." (*Id.*, Ex. D at 4.)

Notice of Eide's bankruptcy proceedings was never mailed directly to Colltech or the Hospital, but was instead mailed to Pinnacle Financial Group and AR Audit Services at the addresses provided on Eide's bankruptcy schedules. (Bergquist Aff. ¶ 11; Costello Aff. ¶ 9.) Neither Pinnacle Financial Group nor AR Audit Services informed Colltech or the Hospital that they had received notices of Eide's bankruptcy petition. (Bergquist Aff. ¶ 11; Costello Aff. ¶ 9.)

On December 7, 2011, the trustee of Eide's bankruptcy filed a Report of No Distribution in the bankruptcy case, indicating that Eide's bankruptcy was a no-asset case. (Sheridan Aff. ¶¶ 5-6, Ex. A at 3-4.) On February 1, 2012, the bankruptcy court issued an order discharging Eide from bankruptcy under 11 U.S.C. § 727. (Bankr. No. 11-47265, Feb. 1, 2012, Docket No. 26.)

## IV.    COLLTECH'S COLLECTION PROCEDURES

Colltech contends that it provides "detailed training and testing" to its new employees regarding compliance with state and federal debt collection statutes, including the FDCPA. (Costello Aff. ¶ 2.) In particular, Colltech requires two weeks of classroom training on these laws. (*Id.*) Colltech also periodically updates education for current employees, and conducts a random review of collectors and files to ensure compliance with debt collection laws. (*Id.*) Colltech maintains an electronic recording system which documents all of its collection activities, including the timing and content of collections communications made or attempted. (*Id.* ¶ 3.) In response to Eide's discovery requests, Colltech refused to provide these training materials, citing the possibility that the materials may contain trade secrets. (Sheridan Aff. ¶¶ 11-14, Ex. B at 18-20.) In objecting to the discovery requests, Colltech indicated it would produce the documents only if a protective order was in place. (*Id.*, Ex. B at 18.) To date, neither a protective order nor a motion to compel this discovery has been filed.

With respect to consumers that have filed for bankruptcy in particular, Colltech "relies upon Sanford Bemidji Medical Center not to forward accounts in bankruptcy, and assures that any accounts mistakenly referred for collection are promptly removed from

actively collected accounts." (Costello Aff. ¶ 10.) The collection agreement between Colltech and the Hospital provides that if the "hospital knows that the debtor disputes the account, is represented by an attorney, or has filed bankruptcy, hospital shall notify agent at the time of referral of the account or promptly upon receipt of that information if the account was previously referred." (*Id.*, Ex. E at 1.) The Hospital, in turn "maintains an electronic record keeping system that allows it to mark an account where notice has been received that the debtor has filed for bankruptcy." (Bergquist Aff. ¶ 6.) When the Hospital "receives notice that an individual has filed for bankruptcy, the account is marked as being a bankrupt account to prevent additional statements from being sent and after receipt of the bankruptcy discharge notice the account balance is adjusted to zero." (*Id.*)

## V.    COLLTECH'S COMPLAINT

Eide brought this action against Colltech, alleging numerous violations of the FDCPA. (Compl., Mar. 30, 2012, Docket No. 1.) The complaint alleges that Colltech's February 15 letter was "an illegal communication in an attempt to collect a debt." (*Id.* ¶ 13.) Specifically the complaint alleges that the letter violated provisions of the FDCPA that prohibit a debt collector from (1) engaging in conduct that harasses, oppresses, or abuses "any person in connection with the collection of a debt," 15 U.S.C. § 1692d; (2) using "false, deceptive, or misleading representation or means in connection with the collection of any debt," § 1692e, including false representations of "the character, amount, or legal status of any debt," § 1692e(2)(A); and using "unfair or unconscionable

means to collect or attempt to collect any debt," § 1692f, including attempting to collect

an amount not permitted by law, § 1692f(1).  (Compl. ¶¶ 14, 18.)

## ANALYSIS

## I.    MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

Summary judgment is appropriate where there are no genuine issues of material

fact and the moving party can demonstrate that it is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit,

and a dispute is genuine if the evidence is such that it could lead a reasonable jury to

return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A court considering a motion for summary judgment must view the facts in the

light most favorable to the non-moving party and give that party the benefit of all

reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.    Standard for Liability Under the FDCPA[4]

The FDCPA is a remedial, strict liability statute which was intended to be applied

in a liberal manner.  *Cordes v. Frederick J. Hanna & Assocs., P.C.*, 789 F. Supp. 2d

1173, 1175 (D. Minn. 2011).  "A violation of the FDCPA is reviewed utilizing the

---

[4] It is undisputed that the FDCPA is applicable in this case because Colltech is a "debt collector," Eide is a "consumer," and the "debt" that Colltech attempted to collect fits the statutory definition of "debt" under the FDCPA.  *See* 15 U.S.C. § 1692a(3), (5), (6) (defining terms).

unsophisticated-consumer standard which is designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (internal quotation marks omitted).  This standard is designed to "protect[] the uninformed or naïve consumer," while still containing "an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters." *Id.* at 317-18.

Although Eide's complaint alleges violations of numerous provisions in the FDCPA, each violation stems from the fact that Colltech sent Eide a letter regarding a debt that Eide contends was discharged in bankruptcy prior to receipt of the letter.  Eide's complaint essentially alleges that Colltech falsely represented the legal status of his debt by insinuating that, despite the debt's discharge in bankruptcy, Eide was nonetheless obligated to pay the Hospital debt he had incurred prior to the filing of his bankruptcy petition.  In other words, by asserting that Eide owed a debt that no longer existed, Eide contends that Colltech's letter was false on its face.  Colltech's motion for summary judgment addresses the circumstances surrounding the receipt of the letter holistically, and argues that it is entitled to summary judgment on all of Eide's claims based on three general theories.  Colltech does not argue, however, that there may be a basis for granting summary judgment in its favor on some of the FDCPA violations alleged in the complaint, even if the Court were to reject its general theories.  Due to the nature of Colltech's motion and the single theory of liability, albeit one captured by several distinct provisions of the FDCPA, the Court will also analyze Eide's complaint holistically, as

analysis of the three general theories advanced by Colltech is applicable to the various violations of the FDCPA alleged.

### C.       Discharge of Eide's Debt in Bankruptcy

Colltech first argues that it did not violate the FDCPA in sending a letter to Eide because the hospital debt was not actually discharged in Eide's bankruptcy.  If the debt was not discharged and instead was due and payable on February 15, 2012, Colltech's letter seeking to collect that debt would not have been misleading, would not have mischaracterized the legal nature of the debt, and would not have constituted harassment under the FDCPA.

The bankruptcy code generally exempts from discharge debts that were "neither listed nor scheduled" in time to permit the creditor to timely file proof of a claim or timely request a determination of dischargeability.  *In re Anderson*, 72 B.R. 783, 786 (Bankr. D. Minn. 1987) (citing 11 U.S.C. § 523(a)(3)).  Proper listing of a debt requires "the name of the creditor and the complete mailing address including zip code."  *Id.*  But in a no-asset bankruptcy case, section 523(a)(3) does not "act to deny a debtor's discharge for not listing or scheduling a creditor in time to file a proof of claim."  72 B.R. at 787.  This is so because in no-asset cases it is unnecessary for creditors to file claims and the bankruptcy court therefore sets no deadline for filing such claims.  *In re Mai Yer Moua*, 457 B.R. 755, 758-59 (Bankr. D. Minn. 2011).  "Because it would have no chance of receiving a distribution anyway, . . . a creditor suffers no harm from losing the abstract opportunity to participate in the case.  In such no-asset cases, unscheduled debts are not

excepted from discharge." *Id.* at 759; *see also In re Hauge*, 232 B.R. 141, 147-48 (Bankr. D. Minn. 1999).

The trustee of Eide's bankruptcy certified to the bankruptcy court that Eide's bankruptcy was a no-asset case, stating that "there is no property available for distribution from the estate over and above that exempted by law." (Bankr. No. 11-47265, Chapter 7 Trustee's Report of no Distribution, Dec. 7, 2011.)  Because Eide's bankruptcy was a no asset case, the hospital debt was discharged by the bankruptcy court's discharge order, (Bankr. No. 11-47265, Order Discharging Debtor, Feb. 1, 2012, Docket No. 26), even though Eide failed to properly list the Hospital's address in his bankruptcy schedules.  Furthermore, even if the failure to properly list the Hospital's address could be a basis for the Hospital to challenge the debt, the debt is still considered discharged until such time as the Hospital would succeed on any such challenge. *See In re Hauge*, 232 B.R. at 147 ("[T]he effect of discharge on any debt is final upon the grant of general discharge in a bankruptcy case, without regard to future events, though parties may require a post-discharge adjudication of the nature of that effect."). Therefore, the Court concludes that the hospital debt was discharged in bankruptcy, and was no longer due and owing when Colltech sent a collection letter to Eide.

## D.    Requirement that Eide Dispute the Debt

Colltech next argues that Eide's FDCPA claims fail as a matter of law because he did not dispute the validity of the hospital debt within thirty days of receiving the first collection letter from Colltech.

The FDCPA requires a debt collector to send a consumer written notice containing, among other information,

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector . . . .

15 U.S.C. § 1692g(a).  If a consumer notifies the debt collector of any dispute within thirty days "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment," and mails such verification to the consumer.  15 U.S.C. § 1692g(b).  Once the consumer notifies a debt collector and disputes the debt, "[a]t a minimum, the debt collector must contact the creditor and verify the nature, status, and balance of the debt and then convey that information to the consumer."  *Erickson v. Johnson*, Civ. No. 05-427, 2006 WL 453201, at *6 (D. Minn. Feb. 22, 2006) (citing *Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1203 (9th Cir. 1999)); *see also Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1003 (8th Cir. 2011).  A consumer's failure to dispute the validity of a debt as provided in § 1692g "may not be construed by any court as an admission of liability by the consumer."  15 U.S.C. § 1692g(c).

To resolve Colltech's motion for summary judgment, the Court must determine whether a consumer may bring an FDCPA claim solely on the basis that a debt collector sought to collect a debt that was not legally collectible if the consumer has not first challenged the validity of the debt through the statutory procedures set forth in § 1692g. Courts considering the question have split over whether the consumer dispute provision in § 1692g is a de facto prerequisite to bringing a federal lawsuit.

Some courts have prevented plaintiffs from maintaining lawsuits like the one brought by Eide, requiring plaintiffs first to use the statutory procedure for disputing the validity of the debt. *See, e.g.*, *Bleich v. Revenue Maximization Grp., Inc.*, 233 F. Supp. 2d 496, 501 (E.D.N.Y. 2002) ("[A] consumer alleging that a debt referenced in a collection letter is not valid, is required to follow the clear and orderly procedure set forth in the FDCPA. Such a consumer may not institute an immediate lawsuit alleging that the letter violates the FDCPA."). Some of these courts have required plaintiffs to use the statutory procedure for disputing the validity of a debt by incorporating a defendant's intent as an element of an FDCPA violation. *See, e.g.*, *Hubbard v. Nat'l Bond & Collection Assocs., Inc.*, 126 B.R. 422, 427 (D. Del.), *aff'd without opinion*, 947 F.2d 935 (3d Cir. 1991) (concluding that § 1692e "was intended to prohibit only knowing or intentional misrepresentations by debt collectors" and not "to penalize debt collectors for their failure to discover a debtor's prior bankruptcy"); *see also Lindbergh v. Transworld Sys. Inc.*, 846 F. Supp. 175, 179 (D. Conn. 1994). Others have concluded that claims based upon a debt collector's attempt to collect a debt that is not actually owed fail to identify a false or misleading debt collection practice and therefore, as a matter of law, do

not state a claim under the FDCPA.  *See Bleich*, 233 F. Supp. 2d at 500 ("[T]he allegation that the debt sought to be collected is not owed, standing alone, cannot form a basis for a 'false and misleading practices' claim under the FDCPA."); *see also Lorandeau v. Capital Collection Servs.*, Civ. No. 10-3807, 2011 WL 4018248, at *11-*12 (E.D. Pa. Sept. 8, 2011); *Reed v. Afni, Inc.*, Civ. No. 09-459, 2011 WL 112430, at *2 (D. Utah Jan. 13, 2011); *Palmer v. I.C. Sys., Inc.*, Civ. No. 04-3237, 2005 WL 3001877, at *5 (N.D. Cal. Nov. 8, 2005).

Although the precise reasoning of courts barring claims like Eide's has varied, all of these courts have relied in part on the rationale that FDCPA litigation premised solely on a disputed debt undermines the purpose of the statutory scheme providing for communication between consumers and debt collectors.  For example, the *Bleich* court explained that if the plaintiff had exercised her rights under § 1692g to obtain verification of the debt "it is entirely likely that litigation would have been avoided."  233 F. Supp. 2d at 500.  The court reasoned that "this is likely the reason Congress chose to include the debt validation procedure in the Act.  The specific procedure for debt validation must have been intended to avoid FDCPA litigation based solely on the debt's validity as communicated to the collection agency by the creditor."  *Id.*; *see also Lindbergh*, 846 F. Supp. at 179 ("On this record, the court can only wonder why the plaintiff has chosen to impose the significant burden of litigation on both the defendant and this court, instead of simply following the cost-effective procedures provided by the FDCPA specifically designed to facilitate the exchange of information between debt collectors and debtors.").

Other courts, however, have concluded that a plaintiff need not dispute the validity of a debt pursuant to § 1692g before filing a lawsuit alleging violations of the FDCPA for a debt collector's use of false or misleading means – representing that an invalid debt is due and payable – to collect a debt. *See, e.g.*, *Burdett v. Harrah's Kan. Casino Corp.*, 294 F. Supp. 2d 1215, 1227 (D. Kan. 2003) (holding that the debt collector "is not entitled to summary judgment . . . just because the [debtor] did not dispute the validity or request verification of the debts"); *see also Velazquez v. NCO Fin. Sys., Inc.*, Civ. Civ. No. 11-00263, 2011 WL 2135633, at *4 (E.D. Pa. May 31, 2011).[5] Courts concluding that § 1692g is not a prerequisite to a suit under the FDCPA have relied upon the statutory language of the FDCPA, which imposes liability for **any** false, deceptive or misleading representation, regardless of the defendant's knowledge or the extent of the

---

[5]   In *Velazquez*, the court declined to directly rule on the issue of whether a plaintiff may bring an FDCPA claim based upon the allegation that the debt sought to be collected was invalid, without first following the verification procedures of § 1692g. 2011 WL 2135633 at *4. The court instead purported to hold that a dispute under § 1692g was not required prior to the filing of plaintiff's lawsuit because she "is not solely alleging that the debt is invalid." *Id.* The court indicated that the plaintiff was additionally alleging that the debt collector "misstated the identity of the creditor and harassed her by threatening to report a collection to the credit reporting bureaus for an account she never had," and therefore did not come within the scope of cases requiring a plaintiff to first dispute the debt under § 1692g before filing a lawsuit under the FDCPA. *Id.* Despite the court's attempt to distinguish Velazquez from plaintiffs bringing a lawsuit based solely on the debt collector's efforts to collect an invalid debt, the allegations as recited by the court suggest that all of Velazquez's FDCPA claims arose out of the debt collector's attempt to collect a debt she did not owe. Obviously, a single letter from a debt collector that attempts to collect a debt that is not owing will raise multiple problems under the FDCPA. For example, if the debtor does not actually owe a debt, a debt collector's letter will necessarily misrepresent the identity of the creditor, as there will be no creditor. Similarly, any letter will be misleading in threatening to report a debtor to a credit reporting agency for failure to pay an account that the debtor does not actually owe. Because all of Velazquez's claims arose out of the attempt to collect an invalid debt, *Velazquez* appears to more appropriately be classified as a case finding that disputing the debt under § 1692g is not a prerequisite to an FDCPA lawsuit based upon a debt collector's attempt to collect an invalid debt.

falsity. *See* 15 U.S.C. § 1692e; *see also Gigli v. Palisades Collection, L.L.C.*, Civ. No. 06-1428, 2008 WL 3853295, at *5-*7 (M.D. Pa. Aug. 14, 2008). These courts have concluded that a plaintiff's failure to challenge such a debt cannot relieve a debt collector of liability for false representations under the statute. *See Gigli*, 2008 WL 3853295, at *7 ("If the debt collector employs false, deceptive, or misleading representations or unfair or unconscionable means in the course of collecting or attempting to collect a debt, the fact that the debt collector provided the consumer written notice complying with § 1692g(a) and/or the consumer never disputed the debt has no bearing on the debt collector's liability under the FDCPA.").

The Court agrees with the approach taken by the latter group of courts, and concludes that disputing the validity of a debt using the procedures outlined in § 1692g is not a prerequisite to filing an FDCPA claim.[6] The Court's finds that this interpretation is

---

[6] Colltech argues that *Richmond v. Higgins*, 435 F.3d 825 (8th Cir. 2006), compels the opposite conclusion. In *Richmond*, the plaintiff was injured in a car accident and incurred a hospital bill. *Id.* at 826. The plaintiff later retained an attorney to bring a personal injury action. *Id.* The plaintiff did not pay his hospital bill, and the hospital contacted the attorney three times about the bill. *Id.* The attorney indicated that the plaintiff was attempting to settle the personal injury action and asked the hospital to contact him in a few weeks. *Id.* at 827. The hospital eventually forwarded the account to Higgins for collection. *Id.* Higgins sent the plaintiff's attorney a collection letter notifying him of the outstanding debt amount and providing the notice required under § 1692g. *Id.* Plaintiff's attorney did not respond. *Id.* After Higgins sent a second letter, plaintiff's attorney responded alleging that the letter misstated the debt amount, because federal Medicaid law prohibited Higgins from collecting the stated amount. *Id.* The plaintiff then brought suit under § 1692e alleging that the communications from Higgins misrepresented the amount of the debt actually collectible. *Id.* The Eighth Circuit concluded that the plaintiff had not alleged a violation of the FDCPA. *Id.* at 829. The court's rationale for reaching this conclusion is not entirely clear. The court opined that the plaintiff "filed this FDCPA action to dispute a debt." *Id.* The court also explained that plaintiff "has never alleged that he was billed for services that were not provided or that he was overcharged for the services he received. The conduct that [plaintiff] alleges violated the FDCPA was Higgins's attempt to collect a previously undisputed debt amount." *Id.*

(Footnote continued on next page.)

consistent with "the plain language of the statute." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011). "Where the language of a statute is unambiguous, the statute should be enforced as written unless there is clear legislative intent to the contrary." *Haug v. Bank of Am., N.A.*, 317 F.3d 832, 835 (8th Cir. 2003) (internal quotation marks omitted). Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," and specifically prohibits the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The plain

_____

(Footnote continued.)

At least one court in this district has cited *Richmond* for the proposition that "[a] consumer cannot circumvent the statute's procedural device to dispute the validity of a debt by filing an action pursuant to § 1692e on the sole basis that the debt is invalid." *Carpenter v. RJM Acquisitions, LLC*, 787 F. Supp. 2d 971, 974-75 (D. Minn. 2011). It seems, however, that *Richmond* actually stands for a narrower proposition—that a plaintiff is not allowed to use an FDCPA claim to litigate the actual validity of the underlying debt. In *Richmond*, the plaintiff was making arguments about the applicability of the Medicaid statute to contend that the represented debt was invalid – thereby seeking to challenge, via an FDCPA claim, the underlying validity of the debt. *See Gigli*, 2008 WL 3853295 at *7 n.7 (interpreting *Richmond*'s holding as limited to the proposition that "[a]n FDCPA action is not the appropriate vehicle to dispute the merits of a debt, especially where the consumer's attorney never disputed the debt within the thirty-day period"). Here, Eide does not seek to challenge the underlying debt – it is clear that the debt is invalid because it was discharged in bankruptcy. Second, *Richmond* seems to have been particularly concerned with the fact that the debt at issue was a "previously undisputed debt amount." 435 F.3d at 829. Plaintiff's attorney had on three occasions discussed the bill with the hospital, and never once disputed it, or raised the Medicare argument. In other words, the Eighth Circuit seemed to find that the fact that plaintiff's attorney later came up with a reason to dispute the debt was not enough to impose liability under the FDCPA for sending letters based on the debt. Here, however, Eide's debt was disputed from the moment Colltech sent its collection letter – i.e., the debt had been discharged in bankruptcy and was not a collectible debt at the time the initial letter was sent. The hospital never communicated with Eide about the status of his debt prior to referring the account for collection. Because *Richmond* appears to prohibit only FDCPA claims that seek to actually litigate the merits of the underlying debt or those in which the plaintiff was given multiple opportunities to challenge a debt prior to receipt of an initial collection letter, the Court finds that *Richmond* does not require the conclusion that § 1692g is a prerequisite to a lawsuit based upon the invalidity of a debt.

- 16 -

language of the statute provides no indication that certain types of false information –
such as information about which the debt collector is unaware of its falsity – are
exempted from liability.  Indeed, courts have uniformly concluded that the FDCPA is a
strict liability statute, *see, e.g.*, *Picht v. John R. Hawks, Ltd.*, 236 F.3d 446, 451 (8th Cir.
2001), indicating that a debt collector's knowledge or intent when engaging in collection
activities is irrelevant to whether an FDCPA violation occurred.  *See Burke v. Messerli &
Kramer P.A.*, Civ. No. 09-1630, 2010 WL 3167403, at *8 (D. Minn. Aug. 9, 2010)
("[A]n unintentional misrepresentation can be actionable under § 1692e.").  Furthermore,
the FDCPA explicitly prohibits a false representation of the "character, amount, or legal
status of any debt."  15 U.S.C. § 1692e(2)(A).  Sending a collection letter indicating that
a certain debt is due and payable when the debt has actually been discharged in
bankruptcy constitutes a false representation about the legal status of the debt, and is a
violation of the FDCPA under the plain language of the statute.  *See Randolph v. IMBS,
Inc.*, 368 F.3d 726, 728 (7th Cir. 2004) ("[A] demand for immediate payment while a
debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts
that money is due, although, because of the . . . discharge injunction, it is not." (internal
citation omitted)).

    The validation provision in § 1692g does not alter the plain language of § 1692e.
Nor does § 1692g alter § 1692k, which provides that "any debt collector who fails to
comply with **any provision** of this subchapter with respect to any person is liable to such
person."  15 U.S.C. § 1692k  (emphasis added).  Section 1692k plainly provides a cause
of action for a debt collector's violation of any provision of the FDCPA, including

§ 1692e, and § 1692g does not state that disputing a debt within thirty days is a prerequisite to filing a lawsuit under § 1692k based on a debt collector's false representation of the legal status of a debt.    In a statute designed to "eliminate abusive debt collection practices by debt collectors" under which "debt collectors are liable for failure to comply with any provision of the Act," *Dunham v. Portfolio Recovery Assocs., LLC.*, 663 F.3d 997, 1000 (8th Cir. 2011) (internal quotation marks omitted), the Court would expect that if failure to follow the procedures of a particular provision was intended to divest a plaintiff of an otherwise available cause of action the FDCPA would say so explicitly.  Instead, as explained more fully below, § 1692g provides a method for consumers to communicate with debt collectors regarding the validity of the debts sought to be collected and protects a debt collector from continuing liability based upon a single misrepresentation where a consumer does not communicate a dispute within thirty days. That § 1692g requires a debt collector to verify a debt upon a consumer's request does not compel the conclusion that a debt collector is allowed to send collection letters carelessly or arbitrarily in the first instance with no basis to believe that the debts sought to be collected are bona fide debts.  Indeed, an initial misrepresentation can be harmful. For example, a consumer – not realizing that a debt collector is in error – may pay a debt they do not actually owe, or in an amount in excess of what they owe, based upon a debt collector's erroneous mailing.  It is not difficult to imagine scenarios where a consumer knows they owe a debt, but are not aware of the exact amount.  A consumer paying a bill in excess of what they owe based upon a debt collector's misrepresentation should not be

barred from bringing an FDCPA action based upon their failure to ask for verification of the debt within thirty days.

Colltech argues that allowing a plaintiff to sue under the FDCPA without first disputing the debt conflicts with the portion of § 1692g which provides that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector."  15 U.S.C. § 1692g(a)(3).  Although this provision may shield a debt collector from certain kinds of liability for collection efforts made after the thirty day period has run, it does not provide that a debt collector is entitled to assume the initial validity of all debts.  If a debt collector was always allowed to assume that a debt is valid, in the absence of a consumer's contention to the contrary, there would be no reason for the statute to specify that a debt collector is entitled to assume the validity of a debt only after the thirty day period for a consumer's response has run.  There is nothing contradictory about allowing a consumer to bring an action under the FDCPA alleging that a debt collector's initial communication contained a false misrepresentation about the legal status of a debt, while preventing a debt collector from incurring continuing liability based upon that representation in later communications made after the consumer fails to challenge the debt.  Indeed, interpreting § 1692g to insulate a debt collector from all liability for false representations about the validity of a debt absent a consumer's dispute

> would encourage debt collectors to arbitrarily send a written notice to any person falsely claiming that person owed a debt.  Provided the consumer fails to take action within thirty days, the debt collector may then institute a debt collection action repeating the same false representations without fear

of FDCPA liability.   Immunizing unscrupulous debt collectors, while depriving consumers of a remedy, would frustrate the FDCPA.

*Gigli*, 2008 WL 3853295 at *7.

Furthermore, allowing plaintiffs to bring claims like Eide's does not render § 1692g superfluous.  The section still serves the purpose of guaranteeing that consumers "receive adequate notice of their rights under the law."  *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000).  Certainly, there will be many consumers that prefer to directly contact a debt collector to dispute the validity of a debt rather than enduring the expense and delay in resolution occasioned by filing a federal lawsuit, and will take advantage of the communication process provided by § 1692g.  Similarly, because a court considers "the frequency and persistence of noncompliance by the debt collector" when determining damages to award a prevailing FDCPA plaintiff, 15 U.S.C. § 1692k(b), § 1692g still affords a debt collector meaningful protection by allowing the debt collector to assume the validity of a debt should the consumer fail to respond to the initial collection notice within thirty days.  Finally, as explained more fully below, construing invocation of the verification procedures in § 1692g as a prerequisite to an FDCPA claim is unnecessary to protect debt collectors who act in good faith, because such debt collectors will be able to take advantage of the bona fide error defense explicitly provided for in the statute.  *See* 15 U.S.C. § 1692k(c).

### E.       Bona Fide Error Defense

Finally, Colltech argues that its failure to ascertain that Eide's debt had been discharged in bankruptcy was due to a bona fide error, and therefore it is shielded from FDCPA liability.

### 1.       Applicability of the Defense

The FDCPA provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). This "bona fide error defense offers debt collectors a narrow exception to the strict liability imposed by the FDCPA." *Cordes v. Frederick J. Hanna & Assocs., P.C.*, 789 F. Supp. 2d 1173, 1177 n.2 (D. Minn. 2011) (internal quotation marks omitted); *see also Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1271 (11th Cir. 2011). The defense does not encompass mistakes of law or misinterpretations of the requirements of the Act itself. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604-05 (2010) The debt collector bears the burden of proving entitlement to the bona fide error defense, and must establish that the violation (1) was unintentional, (2) was a bona fide error, and (3) "occurred despite the maintenance of procedures reasonably adapted to avoid any such error." *Owen*, 629 F.3d at 1271 (internal quotation marks omitted).

Rather than using the failure to use the procedures laid out in § 1692g as a means to bar lawsuits like Eide's, other courts have analyzed the validity of such claims through

the lens of the FDCPA's bona fide error defense. *See, e.g.*, *Cross v. Risk Mgmt. Alternatives, Inc.*, 374 F. Supp. 2d 649, 651 (N.D. Ill. 2005); *Moya v. Hocking*, 10 F. Supp. 2d 847, 849-50 (W.D. Mich. 1998). For example, in *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991 (7th Cir. 2003), the court considered a case nearly identical to the one currently before the Court. In *Turner*, the plaintiff received a letter attempting to collect a debt that had previously been discharged in bankruptcy. *Id.* at 994. The plaintiff did not respond to the letter's directive that he alert the debt collector to any disputes regarding the debt within thirty days. *Id.* Instead, the plaintiff brought a lawsuit alleging that the debt collector violated § 1692e and § 1692f of the FDCPA. *Id.* The Seventh Circuit rejected the defendant's argument that because it had no knowledge of plaintiff's bankruptcy, it could not be found liable under the FDCPA. *Id.* at 995. The court held that "§1692e applies even when a false representation was unintentional." *Id.* The court found that intent was not required, in part because such a finding would render the bona fide error defense superfluous. *Id.* at 996-97. In other words, debt collectors would have no need of the defense specifying that unintentional conduct in the context of a system reasonably designed to avoid errors were exempt from liability, if the statute only applied to intentional acts. *Id.* at 996; *see also Cordes*, 789 F. Supp. 2d at 1177, n.2 ("[I]f violations of the FDCPA required deliberate or purposeful intent, then the bona fide error defense's 'not intentional' element would tend toward surplusage."). For these reasons, the Court will analyze Colltech's conduct in this case under the bona fide error defense.

### 2.    Procedures Reasonably Adapted to Avoid Errors

The parties do not dispute that Colltech's error – sending a letter regarding a debt that had previously been discharged in bankruptcy – was unintentional and constituted a bona fide error.  The Court will therefore analyze only the third element of Colltech's bona fide error defense – whether Colltech had in place procedures that were reasonably adapted to avoid such errors.

"[T]he procedures component of the bona fide error defense involves a two-step inquiry.  The first step is whether the debt collector maintained – i.e., actually employed or implemented – procedures to avoid errors.  The second step is whether the procedures were reasonably adapted to avoid the specific error at issue."  *Owen*, 629 F.3d at 1273-74 (internal quotation marks omitted) (citing *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006); *Reichert v. Nat'l Credit Sys., Inc.*, 531 F.3d 1002, 1006 (9th Cir. 2008)).  Whether a debt collector's procedures are reasonably adapted to avoid certain errors is often a fact intensive inquiry that "depend[s] upon the particular facts and circumstances of each case."  *Id.* at 1274; *see also Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008). Summary judgment is appropriate only if "a reasonable jury could only conclude that [the debt collector]'s procedures were reasonably adapted to avoid such errors."  *Wilhelm*, 519 F.3d at 421.

Maintenance of reasonable procedures does not require a debt collector to conduct "an independent investigation of the debt referred for collection."  *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992) (internal quotation marks omitted).  With respect to cases involving debts not known by the collector to have been discharged in

bankruptcy, a debt collector employs statutorily reasonable procedures to avoid erroneous collection efforts where it relies on creditors not to refer debtors who are in bankruptcy and immediately ceases collection efforts once it learns of a bankruptcy filing. *Hyman v. Tate*, 362 F.3d 965, 967 (7th Cir. 2004); *see also Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 497 (7th Cir. 2007); *Bacelli v. MFP, Inc.*, 729 F. Supp. 2d 1328, 1334 (M.D. Fla. 2010). "The Seventh Circuit has permitted debt collectors to rely on a creditor's assertion that a debtor is not in bankruptcy proceedings, based in part on the lack of any motivation for a creditor to misrepresent this matter, and on the cost for a debt collector to independently verify the same." *Acik v. I.C. Sys., Inc.*, 640 F. Supp. 2d 1019, 1028 (N.D. Ill. 2009).

Although reliance on a creditor to report to the debt collector which accounts have been discharged in bankruptcy may constitute a reasonable procedure "the bona fide error defense 'does not protect a debt collector whose reliance on a creditor's representation is unreasonable.'" *Bacelli*, 729 F. Supp. 2d at 1334 (quoting *Reichert*, 531 F.3d at 1006). To invoke the bona fide error defense, a debt collector therefore must present evidence that its reliance on creditors to furnish the debt collector information was supported by an understanding or agreement. *See Turner*, 318 F. Supp. 2d at 686. Courts have therefore denied summary judgment to debt collectors regarding the bona fide error defense when the debt collector "presents no evidence whatsoever to show that its reliance on [the creditor] was reasonable," *Bacelli*, 729 F. Supp. 2d at 1336, and where the debt collector's assertion regarding its reliance upon creditors for bankruptcy information about accounts is not supported by any understanding or agreement, *Turner*, 318 F. Supp.

- 24 -

2d at 686.  In assessing the overall reasonableness of the debt collector's reliance, courts have looked particularly to whether the reliance has resulted in a small percentage of erroneous collection attempts.  *See Hyman*, 362 F.3d at 968-69 (finding that an understanding with a creditor that the creditor would not refer discharged debts to the collector was a reasonable procedure where only .01 percent of all the debts referred for collection were later discovered to have been discharged in bankruptcy).

Colltech alleges that it relies upon the Hospital to determine whether accounts are subject to bankruptcy proceedings, and this understanding is memorialized in the collection agreement between Colltech and the Hospital.[7]  Colltech also asserts, and Eide does not dispute, that Colltech removed Eide's account from collection immediately upon learning of Eide's bankruptcy.  Eide argues that because Colltech immediately sends letters to debtors referred by the Hospital, it does not employ procedures that are reasonably adapted to avoid the error of sending collection letters regarding debts that have been previously discharged in bankruptcy.  Colltech was not required, however, to investigate the legal status of each debt that was referred from the Hospital in order to comply with the statute.  Instead, Colltech is entitled to rely upon the Hospital in ascertaining whether a debt was subject to bankruptcy.  However, Colltech is only entitled to do so if its reliance was reasonable.  *See Clark v. Capital Credit & Collection*

---

[7] With respect to this defense, the training of Colltech's employees that is the subject of the discovery dispute seems irrelevant.  Whether or not Colltech's employees receive training regarding the legal requirements of the FDCPA does not shed light on whether Colltech employed procedures that were designed to ascertain whether a particular debt was previously discharged in bankruptcy.

*Servs., Inc.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (explaining that, in asserting a bona fide error defense, a debt collector was not entitled to rely upon the creditor to ascertain the disputed nature of debts because the collector knew of the creditor's serious bookkeeping difficulties and billing problems). Here, Colltech has not submitted sufficient evidence for the Court to conclude that it reasonably relied upon the Hospital, as a matter of law. Colltech's reliance is memorialized in the Collection Agreement with the Hospital, which is a fact supporting a finding of reasonableness. On the other hand, Colltech has not presented evidence of how reliably the Hospital operates its electronic flag system, how many accounts referred from the Hospital are actually subject to bankruptcy, or whether it had knowledge of any poor bookkeeping or billing practices by the Hospital. Nor has Colltech presented evidence that its reliance was reasonable in light of the fact that the Hospital used multiple debt collection services, increasing the possibility that bankruptcy notices would be sent to numerous entities other than the Hospital, if debtors – like Eide – scheduled their debts using the address of the collection services from which they had received notices. Furthermore, Colltech, not the Hospital, eventually discovered Eide's bankruptcy after running a credit report. Based on these facts, a reasonable jury could, but would not be required to, conclude that Colltech's reliance on the Hospital to determine whether debts had been previously discharged in bankruptcy was unreasonable. Therefore, the Court will deny Colltech's motion for summary judgment.

## II.     REQUEST FOR ATTORNEY FEES

In its reply brief, Colltech requests that the Court award attorney fees for costs Colltech has incurred in defending this matter under 15 U.S.C. § 1692k(a)(3) and 28 U.S.C. § 1927.  (Def.'s Reply Mem. at 9-10, May 23, 2013, Docket No. 17.)

The FDCPA provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3).  Title 28 U.S.C. § 1927 also allows for the award of attorney fees, providing that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions under § 1927 are only proper "when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443, 445 (8th Cir. 2001) (internal quotation marks omitted).   "[A]n attorney cannot be sanctioned under § 1927 for simply commencing a frivolous lawsuit."  *Gurman v. Metro Hous. & Redevelopment Auth.*, 884 F. Supp. 2d 895, 900 (D. Minn. 2012).

In light of the Court's denial of Colltech's motion for summary judgment, the Court will decline to award attorney fees.  This action clearly raises a variety of statutory issues that are subject to varying interpretations amongst the courts and therefore cannot fairly be characterized as having been brought in "bad faith and for the purpose of harassment."   15 U.S.C. § 1692k(a)(3).   Furthermore, Colltech's submissions do not

establish that Eide's counsel has in any way unreasonably or vexatiously multiplied the proceedings in this case.  Indeed, Eide has filed nothing other than a complaint, a report of the parties' Rule 26(f) planning meeting, and a responsive memorandum to the present motion for summary judgment.  Consequently, the Court will deny Colltech's request for attorney fees.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 9] is **DENIED**.

DATED:  December 11, 2013          _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                     JOHN R. TUNHEIM
                                          United States District Judge